91 P.3d 864 (2004)
151 Wash.2d 512
AMERICAN CONTINENTAL INSURANCE COMPANY, Appellee,
v.
Susan STEEN, individually and as the personal representative of the Estate of Steven Steen, Appellant.
No. 73412-7.
Supreme Court of Washington, En Banc.
Argued May 6, 2003.
Decided May 14, 2004.
As Amended on Reconsideration July 30, 2004.
*866 Stritmatter Kessler Whelan Whithey, Michael Withey, Reed Schifferman, Seattle, Paul Stritmatter, Garth Jones, Ray Kahler, Hoquiam, for Appellant.
Gordon & Polscer LLP, Joseph Hampton, Jacqueline Bell, Seattle, for Appellee.
Williams Kastner & Gibbs, Mary Spillane, Seattle, for Amicus Curiae (Physicians Insurance).
*865 CHAMBERS, J.
Pursuant to RCW 2.60.020 and RAP 16.16, the United States Court of Appeals for the Ninth Circuit certified to this court two questions concerning the annulment of liability insurance policies. Those questions ask:
(1) Is the early cancellation of a claims-made policy that insures against loss or damage through legal liability for the bodily injury or death by accident of any individual an attempt at a prohibited retroactive "annulment" "after the occurrence of any such injury, death, or damage for which the insured may be liable" under RCW 48.18.320, where the cancellation does not affect claims the insurer already had notice of, but does affect claims the insurer does not yet have notice of involving occurrences that happened prior to the cancellation date while the policy was still in force?
(2) Is such a cancellation by an insured hospital that has filed for bankruptcy against the public policy of the State of Washington when no other insurance policies are held by the hospital to cover such occurrences?
See Order Certifying Questions to the Wash. State Supreme Ct. (Order) at 1-2. While American Continental Insurance Company (ACIC) argues that RCW 48.18.320 does not apply to claims-made insurance policies, Susan Steen maintains the statute covers all insurance contracts regardless of type. Based upon the plain language of the statute, we answer both questions in the affirmative.

FACTS
On September 10, 1998, Steen's husband, Steven Steen, was admitted to Puget Sound Hospital for a gastroenterostomy. Puget Sound Hospital was owned by New American Health Care Corporation (NAHC). On September 15, 1998, Steven was transferred to St. Joseph's Medical Center after developing complications from the surgery. Steven eventually died on October 1, 1998.
Steen alleges that the Puget Sound Hospital administrator was aware that the hospital did not have imaging equipment that would accommodate some of Dr. S. Ross Fox's obese patients, including Steven. Additionally, Steen alleges that the "sequence of events leading up to [her husband's] death demonstrate palpable medical mismanagement." Steen's Excerpts of Record (SER) at 31. After NAHC did not respond to the complaint, the Pierce County Superior Court entered a default judgment against it.
Between Steven's surgery and his death, NAHC was insured against legal liability by ACIC under a primary policy and an excess policy, both of which were renewed on April 1, 1999, and again on April 1, 2000. The policies contained claims-made-and-reported provisions, which meant that the insurer had to receive notice of either a claim or circumstance that could lead to a claim within the policy period to trigger potential coverage.
NAHC filed for bankruptcy after the policies had been renewed for their final year. Then NAHC and ACIC agreed to cancel the insurance policies in exchange for a pro rata refund of the premiums paid. Had NAHC and ACIC not agreed to cancel the policies, coverage would have continued until April 1, *867 2001. The cancellation of the policies did not affect any claims for which ACIC had received notice of prior to August 1, 2000, the effective date of the cancellation. However, the agreement to cancel the policies nullified, by the terms of the insurance contract, coverage for claims which ACIC had not received notice of by August 1, 2000, even if a covered occurrence happened prior to cancellation. There is no evidence in the record that either NAHC or ACIC attempted to give notice to injured people with potential claims against the insured of their intention to cancel the policies.
Steen filed a wrongful death action against NAHC and Puget Sound Hospital in Pierce County Superior Court on November 1, 2000. ACIC was not named as a defendant in the action. ACIC was made aware of the claim on December 11, 2000. Initially, ACIC provided NAHC with defense counsel pursuant to a reservation of rights. However, ACIC withdrew representation of NAHC after it concluded Steen's claim was not covered due to the cancellation of the policies. The date Steen's claim was filed was within the original policy period, and there is no question that absent the cancellations the policies would have covered Steen's claim.
On June 28, 2001, ACIC filed a declaratory judgment action in the United States District Court for the Western District of Washington in Seattle to resolve the insurance coverage issues pertinent to Steen's claims against NAHC. The Honorable John C. Coughenour granted summary judgment to ACIC concluding that, as a matter of law, ACIC policies did not cover Steen's claims against NAHC. Steen appealed to the United States Court of Appeals for the Ninth Circuit, which certified the two questions above to this court.

ANALYSIS
Occurrence and claims-made policies are fundamentally different, and often there are sound reasons for treating them differently. Cf. Safeco Title Ins. Co. v. Gannon, 54 Wash.App. 330, 337, 774 P.2d 30 (1989) (discussing differences). Occurrence policies generally provide coverage for damage that occurs during the policy period regardless of when the damage is discovered if notification is made within a reasonable time. Id. at 337-38, 774 P.2d 30. By contrast, claims-made policies generally provide coverage for claims which the insurer receives notice of during the policy period regardless of when the damage occurred. Id. at 338, 774 P.2d 30. While occurrence policies were the dominant form of insurance used in 1947 (when RCW 48.18.320 was adopted), claims-made policies have been more frequently used in the last two decades. JEFFREY W. STEMPEL, INTERPRETATION OF INSURANCE CONTRACTS: LAW AND STRATEGY FOR INSURERS AND POLICYHOLDERS § 31.3.3 (1994). Although we are cognizant of the difference between the two types of policies, our function in answering the certified questions is to determine whether our legislature has chosen to treat the two types of policies differently.

Statutory Interpretation
Our primary objective is to ascertain and give effect to the intent and purpose of the legislature in creating the statute. State v. Watson, 146 Wash.2d 947, 954, 51 P.3d 66 (2002). First, we attempt to derive legislative intent from the language of the statute itself. Id. If the statute is clear on its face, its meaning is to be ascertained from the language of the statute alone. Id. Legislative definitions included in the statute are controlling. Id. However, in the absence of a statutory definition, we give the term its plain and ordinary meaning ascertained from a standard dictionary. Id. A statute is unclear if it can be reasonably interpreted in more than one way. Yet, it is not ambiguous simply because different interpretations are conceivable. Id. at 955, 51 P.3d 66. We are not to search for "an ambiguity by imagining a variety of alternative interpretations." W. Telepage, Inc. v. City of Tacoma, 140 Wash.2d 599, 608, 998 P.2d 884 (2000).
An unambiguous statute is not subject to judicial construction, and we will not add language to an unambiguous statute even if we believe the legislature intended something else but did not adequately express it. Watson, 146 Wash.2d at 955, 51 P.3d 66. If a statute is ambiguous, we resort to principles of statutory construction, legislative *868 history, and relevant case law to assist in interpreting it. Id.
The statute in question provides:

No insurance contract insuring against loss or damage through legal liability for the bodily injury or death by accident of any individual, or for damage to the property of any person, shall be retroactively annulled by any agreement between the insurer and insured after the occurrence of any such injury, death, or damage for which the insured may be liable, and any such annulment attempted shall be void.
RCW 48.18.320 (emphasis added). It is clear on the face of this statute that the legislature intended for it to apply to all insurance policies. By its terms, RCW 48.18.320 is not limited to "occurrence policies," nor are "claims-made policies" excluded by the terms of the statute. Regardless of policy type, the statute forbids and voids any agreement between the insured and the insurer to "retroactively annul[ ]" an insurance policy after the "occurrence" of an event "for which the insured may be liable." RCW 48.18.320. This statute is broad and inclusive. Any modification to exclude claims-made policies must be left to the legislative branch.[1]
The legislature has had ample opportunity to amend the statute if it had wanted to do so. RCW 48.18.320 was adopted in 1947. Claims-made policies were introduced in the 1960s. See Queen City Farms, Inc. v. Cent. Nat'l Ins. Co. of Omaha, 64 Wash.App. 838, 877, 827 P.2d 1024 (1992) (citing 3 ROWLAND H. LONG, LIABILITY INSURANCE APP-30, APP-53 (1976)). While it is unlikely that the legislature had the particularities of claims-made policies squarely in mind in 1947, it has had several decades of opportunity to exclude claims-made policies from RCW 48.18.320 had it desired to do so.
Because the legislature has not chosen to exclude claims-made policies, the statute applies to all policies. Hence, we must next ascertain which agreements between insureds and their insurers the legislature intended to prohibit and void. The words "retroactively annulled" are not defined by the legislature; therefore, we look to a dictionary in use at the time the statute was adopted to give them their plain and ordinary meanings. See Watson, 146 Wash.2d at 954, 51 P.3d 66. Black's Law Dictionary defines "annul" as:
To cancel; make void; destroy. To abrogate, nullify, or abolish. To annul a judgment or judicial proceeding is to deprive it of all force and operation, either ab initio or prospectively as to future transactions.
BLACK'S LAW DICTIONARY 115 (3d ed.1933). Black's specifically noted, "[annul] is not a technical word and there is nothing which prevents the idea from being expressed in equivalent words." Id.
The very first definition of "annul," as it was ordinarily used in 1947, is "to cancel." The illustrative example given applies both ab initio and prospectively as to future transactions. Similarly, Black's defines "cancel" as "[t]o obliterate; to strike or cross out; to destroy the effect of an instrument." Black's, supra, at 270. A contemporary Webster's New International Dictionary also lists "cancel" as a synonym for "annul." 1 WEBSTER'S NEW INTERNATIONAL DICTIONARY 108 (2d ed.1947). Bringing the term full circle, Webster's second definition of "cancel" is "to annul." Id. at 389. Thus, when the statute in question was adopted, the words "annul" and "cancel" were often synonymous and used interchangeably. Further, "annul" was used to mean both to cancel prospectively and to rescind ab initio.[2] *869 Black's defines "retroactive," the root of the adverb "retroactively," as "[having] the same meaning as `retrospective.'" BLACK'S, supra, at 1551. In turn, "retrospective" is defined as "[l]ooking back; contemplating what is past." Id. Webster's second definition of "retrospective" is "[r]etroactive; affecting things past. Cf. EX POST FACTO." 2 WEBSTER'S NEW INTERNATIONAL DICTIONARY 2130 (2d ed.1947). Further, Webster's first definition of "retroactive" is "[h]aving relation or reference to, or efficacy in, a prior time." Id. at 2129.
Words have meaning, and words in a statute are not superfluous. City of Bellevue v. Lorang, 140 Wash.2d 19, 24, 992 P.2d 496 (2000). The words "retroactively annulled" must be read together; each given a separate meaning. See Lorang, 140 Wash.2d at 24, 992 P.2d 496. "Annul" meant both prospective cancellation and ab initio rescission, and it is modified by "retroactively," which meant looking back or affecting things past. Thus, when the statute was adopted the legislature intended to prohibit and void any agreement between insureds and their insurers, which while looking back or affecting things past, prospectively cancels or rescinds ab initio an insurance contract "after the occurrence of [an event] for which the insured may be liable." RCW 48.18.320.
The term "occurrence" has a general meaning in the context of insurance law well known to legislators. Generally, an "occurrence" is an event that gives rise to the legal liability of the insured for which the insurance contract provides coverage. See, e.g., Queen City Farms Inc., v. Cent. Nat'l Ins. Co. of Omaha, 126 Wash.2d 50, 75, 882 P.2d 703, 891 P.2d 718 (1994). The addition of the words "for which the insured may be liable" broadens the scope of events after which agreements to cancel or rescind will be prohibited and void. RCW 48.18.320 (emphasis added). Therefore, both events that do give rise to legal liability covered by the policy and events that could give rise to legal liability covered by the policy are used by our legislature to mark the point in time after which agreements retroactively annulling insurance coverage are prohibited and void.
The term "void" means "[n]ull; ineffectual; nugatory; having no legal force or binding effect." BLACK'S LAW DICTIONARY 1822 (3d ed.1933). Additionally, Black's notes that "`[v]oid' seldom implies entire nullity; but is, in a legal sense, subject to large qualifications." Id. The legislature qualified "void" in this statute by limiting its application to agreements that (1) are made after the occurrence of an event for which the insured may be liable and (2) retroactively annul coverage of that event. The statute does not void agreements that are made before the occurrence of any injury, death, or damage for which the insured may be liable. Thus, the legal force and binding effect of an agreement to cancel any insurance policy is (1) limited to circumstances when the agreement is made before the occurrence of a potentially covered event and (2) ineffectual when the agreement is made after the occurrence of the potentially covered event. The legislature did not intend to prohibit the cancellation of insurance contracts. Rather, the legislative intent expressed in RCW 48.18.320 is to ensure that cancellation does not adversely impact any person who was injured or damaged by an occurrence before such cancellation.
The statute is clear on its face and applicable to all insurance contracts. This includes claims-made policies. Accordingly, we hold RCW 48.18.320 prohibits and voids any agreement between an insured and insurer to retroactively cancel or rescind an insurance policy to the extent that it is made after the occurrence of the peril insured against. We hasten to add that an insurer may cancel a policy for nonpayment of fees, and an insured may cancel a policy in accordance *870 with RCW 48.18.300.[3] The statute voids agreements between an insurer and insured to cancel or rescind policies if, and only if, the agreement is made after the occurrence of a potentially covered injury, death, or damage.
We now turn to the specific questions certified to determine whether (1) the agreement between NAHC and ACIC was "an attempt at a prohibited retroactive `annulment,' "and (2) the cancellation of the insurance coverage was "against the public policy of the State of Washington." Order at 2.

Application to Steen
ACIC argues that under a claims-made policy the statutory "occurrence" does not occur until notice of loss has been given to the insurer. While that may be a fair reading of the insurance contract, it is irreconcilable with the language of the statute. The plain language of the statute focuses on events for which the insured is legally liable; it says nothing about events for which the insurer is contractually liable. The statute forbids retroactive annulment after the occurrence of the peril insured against. We have no grounds to suspend operation of the statute until after the contractual trigger of the insurer's obligations. Cf. 2 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE § 30:8 (3d ed.1995); Safeco Ins. Co. of Am. v. Hirschmann, 112 Wash.2d 621, 627, 773 P.2d 413 (1989).
As this court has long held, "[w]hen the words in a statute are clear and unequivocal, this court must apply the statute as written." State v. Michielli, 132 Wash.2d 229, 237, 937 P.2d 587 (1997); see also State v. Carey, 4 Wash. 424, 428-29, 30 P. 729 (1892) (citing THOMAS M. COOLEY, A TREATISE ON THE CONSTITUTIONAL LIMITATIONS WHICH REST UPON THE LEGISLATIVE POWER OF THE STATES OF THE AMERICAN UNION 745 (5th ed. 1883)). The insurer raises arguments that application of the statute may confound the use of claims-made insurance policies. However, if special treatment of claims-made policies is desirous, the required action is legislative, not judicial. "[W]e must enforce the statute as written." Duke v. Boyd, 133 Wash.2d 80, 88, 942 P.2d 351 (1997).
Here, the alleged acts of negligence committed by the hospital occurred between September 10, 1998 and October 1, 1998, and were occurrences within the coverage of the ACIC policies.[4] Moreover, no one argues the insured, NAHC, may not be liable. The insured and insurer came together and agreed to cancel the policies effective August 1, 2000, which is after the occurrences allegedly leading to Steven Steen's death. Therefore, the agreement to cancel the policies in this instance is a prohibited retroactive annulment and void as to perils insured against that occurred before the cancellation agreement was made under RCW 48.18.320.[5] Accordingly, we answer the first certified question in the affirmative.

Public Policy
Because we conclude above that the cancellation of an insurance policy under such circumstances violates RCW 48.18.320, it follows that it is also against the public policy expressed in that statute. Consequently, we answer the second certified question in the affirmative as well.[6]

*871 CONCLUSION
The purpose of RCW 48.18.320 is not the protection of either the insured or the insurer. Its purpose is to protect the injured and damaged by preventing insureds and insurers from coming together and canceling or rescinding insurance contracts after a potentially covered injury, death, or damage has occurred. By the plain and ordinary meaning of its language, RCW 48.18.320 effectuates our legislature's purpose by prohibiting insureds and insurers from agreeing to retroactively annul a liability policy after the occurrence of a covered event for which the insured may be liable and by voiding the effect of any such agreement under these circumstances. Here, NAHC and ACIC did just that in violation of the statute. As a result, we answer both questions certified to us from the United States Court of Appeals for the Ninth Circuit in the affirmative.
WE CONCUR: ALEXANDER, C.J., and SANDERS, IRELAND, JJ.
MADSEN, J. (concurring/dissenting).
I write separately, first, to emphasize that under RCW 48.18.320 a cancellation is effective as to any occurrence falling after the date of the cancellation but ineffective as to any occurrence that took place prior to the cancellation.
Second, in my view the majority both misconstrues and unnecessarily answers the second question certified by the federal court. The majority treats the second question as if it involves RCW 48.18.320, majority at 866, and concludes that because the statute prohibits early cancellation of a claims-made policy under these facts, public policy also prohibits such a cancellation, majority at 870. The first certified question does pertain to the statute. It asks whether an early cancellation of a claims-made policy is a prohibited annulment under RCW 48.18.320 when that cancellation affects claims unknown to the insurer but that involve occurrences that happened before the cancellation date.
In the second certified question, however, the Ninth Circuit assumes the statute does not apply: if the statute does not apply to claims-made policies, does public policy prohibit early cancellation of claims-made policies under these circumstances? The federal court asks this second question because the statute is not a good fit for claims-based policies since as the majority notes, RCW 48.18.320 was enacted before claims-made policies came into use.[1] The federal court thus had reason to think that the statute might not apply, and it would need an answer under state law to the appellant's contention that such a cancellation is invalid even if the statute does not apply.
The second certified question therefore asks whether an early cancellation of a claims-made policy violates this state's public policy where no other insurance policies are held by the hospital to cover occurrences before the cancellation and the insurer has no notice of the claims based on those occurrences prior to the cancellation. If this court answered that claims-made policies are not covered by RCW 48.18.320, then, and only then, would the second question become relevant. That is, assuming that the statute does not apply to claims-made policies, does public policy call for a judicially recognized rule that claims-made policies cannot be cancelled before the end of the coverage period so as to leave injured and damaged people unprotectedwhich would be the case if the hospital had no other policies in place.
Since the majority's response to the first certified question is that claims-made policies do fall within RCW 48.18.320, there is no basis for answering, and no reason to answer, the second certified question. Moreover, given that this court rarely invokes *872 public policy to override an insurance contract or its terms, New Hampshire Indemnity Co. v. Budget Rent-A-Car Systems, Inc., 148 Wash.2d 929, 935, 64 P.3d 1239 (2003) and Mendoza v. Rivera-Chavez, 140 Wash.2d 659, 662-63, 999 P.2d 29 (2000), it follows that the court should be reluctant to answer the second question and should be especially reluctant to do so once the second question is essentially mooted by the answer to the first question.
Finally, I note that the majority's response to the second question is also unrelated to any argument advanced by the appellant, who does not contend that relevant public policy is found in RCW 48.18.320.
The court should decline to reach the second certified question.
JOHNSON, J., concurs.
BRIDGE, J. (dissenting).
By concluding that RCW 48.18.320 applies to all insurance contracts regardless of policy type, the majority has obliterated the distinction between claims-made policies and occurrence policies. I would conclude that RCW 48.18.320 applies only to those insurance contracts in which risk has already attached. Because I would answer the first certified question in the negative and would not answer the second certified question, I respectfully dissent.

I
I agree with the majority that occurrence and claims-made policies are fundamentally different. Occurrence policies provide coverage for the insured's negligence, no matter when damage is discovered or when the insurer is notified, so long as the damage occurred within the policy period and notification is given within a reasonable time. Safeco Title Ins. Co. v. Gannon, 54 Wash.App. 330, 337-38, 774 P.2d 30, review denied, 113 Wash.2d 1026, 782 P.2d 1069 (1989).
Coverage under a claims-made policy, on the other hand, is dependent upon the claim being reported to the insurer during the effective policy period. Id. at 338, 774 P.2d 30. Critical to a claims-made policy is that notice of the claim must be given to the insurer during the policy period itself. Id. When an insured becomes aware of any event that could result in liability, it must give notice to the insurer. Id. That notice must be given within a reasonable time or as soon as practicable within the policy period. Id. If the claim is not reported during the policy period, no liability attaches. Id.
In this case, the type of policy in dispute is a claims-made policy. The undisputed record does not indicate that American Continental Insurance Company (ACIC) received notice of any "claim" or "circumstance" regarding either Steven Steen's treatment or his death prior to the cancellation of the policies at issue.[1] New American Health Care Corporation's (NAHC) claims-made policies with ACIC were unambiguously conditioned upon such notice.[2] Absent notice *873 within the policy period, I would find that ACIC is not liable for Steen's wrongful death claim.

II
The main issue in this case is whether the cancellation of a claims-made policy is included within the prohibition of RCW 48.18.320 for retroactive annulment if the injury, death, or damage occurred during the policy period but notice was not received during the effective policy period. After examining the plain language of RCW 48.18.320, the majority concludes that such cancellation is prohibited by RCW 48.18.320. Majority at 869. I disagree.
The term "retroactively annulled," as utilized in RCW 48.18.320, is not defined within the statute or chapter nor does it appear elsewhere in chapter 48.18 RCW. Relying on Black's Law Dictionary, the majority finds that "annul" is defined as "cancel" and, therefore, the prospective cancellation of a claims made policy is prohibited "after the occurrence of the peril insured against." Majority at 868, 869.
In interpreting a statute, the court gives effect to the intent and purpose of the legislature in creating it. Kilian v. Atkinson, 147 Wash.2d 16, 20, 50 P.3d 638 (2002). If the statute is clear on its face, its meaning is to be derived from the language of the statute alone. Id. Legislative definitions included in the statute are controlling. However, in the absence of a statutory definition, the term is given its plain and ordinary meaning ascertained from a standard dictionary. State v. Watson, 146 Wash.2d 947, 954, 51 P.3d 66 (2002). An unambiguous statute is not subject to judicial construction, and the court will not add language to an unambiguous statute even if it believes the legislature intended something else but did not adequately express it. Kilian, 147 Wash.2d at 20, 50 P.3d 638. A statute is ambiguous if it may be reasonably interpreted in more than one way. Id. However, it is not ambiguous simply because different interpretations are conceivable. Id. at 20-21, 50 P.3d 638. If the court finds that a statute is ambiguous, it resorts to rules of statutory construction, legislative history, and relevant case law to assist in the interpretation of the statute. Id. at 21, 50 P.3d 638. In any case, it is fundamental that statutes be given a rational and sensible interpretation. State v. Thomas, 121 Wash.2d 504, 512, 851 P.2d 673 (1993); State v. Smalls, 99 Wash.2d 755, 766, 665 P.2d 384 (1983); Krystad v. Lau, 65 Wash.2d 827, 844, 400 P.2d 72 (1965).
RCW 48.18.320 is clear on its face. Therefore, its meaning is derived from the language of the statute alone. Kilian, 147 Wash.2d at 20, 50 P.3d 638. It is observed that RCW 48.18.320 uses the term "retroactively annulled." This term does not appear anywhere else in chapter 48.18 RCW. Because the term is not defined within the statute or chapter, we look to a dictionary for the plain and ordinary meaning. See Watson, 146 Wash.2d at 954, 51 P.3d 66. "Retroactive" is defined as "retrospective." BLACK'S LAW DICTIONARY 1184 (5th ed.1979). "Retrospective," in turn, is defined as "[l]ooking backward; contemplating what is past." Id. "Annul" is defined as "[t]o reduce to nothing; annihilate; obliterate; to make void or of no effect; to nullify; to abolish; to do away with." Id. at 83. Therefore, "retroactive annulment" may be defined as "abolishing or voiding what is past."
To relate this term to RCW 48.18.320, what is prohibited is an agreement that abolishes or voids liability of the insured after the occurrence of any injury, death, or damage for which the insured may be liable.[3] RCW *874 48.18.320 does not prohibit the prospective cancellation of a policy for which injury, death, or damage has yet to occur. The dispute in this case stems from whether the statute applies to situations in which the claims-made policy is cancelled despite future claims that have yet to be made regarding an injury, death, or damage that occurred during the policy period. To settle this dispute, it needs to be considered when risk attaches to create liability.
For claims-made policies, risk does not attach until a claim is made or notice of a circumstance is given during the requisite policy period. Therefore, if an insurer does not receive any notice for a claim or circumstance regarding potential liability during the policy period, no risk attaches. This is most likely true even though the injury, death, or damage occurred during the policy period but notice was not received during the policy period.[4] Steen concedes that the general rule is that cancellations operate prospectively. However, she asserts that "a request for cancellation communicated to the insurer after a loss has already occurred does not absolve the company from liability for losses that have already occurred." Appellant's Opening Br. at 18. This assertion is true for occurrence policies, but it is not true for claims-made policies. In the case of claims-made policies, if the insurer does not receive any notice of a claim or circumstance within the policy period, risk does not attach, and therefore, liability cannot attach.
It should be noted that cancellation of insurance policies is generally not prohibited. In fact, the claims-made policies in question contain the following provision:
(A) The NAMED INSURED may cancel... this Policy by mailing the Company written notice stating when such cancellation... will be effective.
. . . .
(D) If the NAMED INSURED cancels the Policy, premium refund will be calculated in accordance with the customary short rate procedure.
ACIC Excerpts of Record (AER) at 82-83. In the insurance arena "cancellation" generally refers to a policy on which there is no pending loss claim at the time the policy is abrogated. JEFFREY W. STEMPEL, INTERPRETATION OF INSURANCE CONTRACTS: LAW AND STRATEGY FOR INSURERS AND POLICYHOLDERS § 4.1.2 (1994). In other words, the cancellation of a policy operates prospectively only.
In its plain language analysis, the majority ignores the elementary rule that where the legislature uses certain statutory language in one instance and different language in another, there is a difference in legislative intent. As stated before, the term "retroactively annulled" is only found in RCW 48.18.320 and not anywhere else in chapter 48.18 RCW. The term "cancellation," however, is found in other statutes within the chapter. See, e.g., RCW 48.18.300, .310. "[W]here the Legislature uses certain statutory language in one instance, and different language in another, there is a difference in legislative intent." United Parcel Serv., Inc. v. Dep't of Revenue, 102 Wash.2d 355, 362, 687 P.2d 186 (1984).[5] Thus, it is assumed that by using "retroactively annulled," the legislature did not mean "cancellation." Two reputable treatises accurately distinguish the two terms:[6] *875 Rescission is the abrogation of a contract ab initio (from the outset). It is the judicial equivalent of an annulment rather than a divorce. If the court declares a contract rescinded, the contract is treated as if it never existed and the parties are placed back in their original position.
STEMPEL § 4.1 (footnote omitted).
The primary difference, connotatively, between a rescission and cancellation is that one normally speaks of "rescinding" or "avoiding" a policy on which the policyholder has made a claim for loss. Cancellation is the preferred term when referring to policies on which there is no pending loss claim at the time the policy is abrogated.
STEMPEL § 4.1.2.
In other words, cancellation of a policy operates prospectively, while rescission, in effect, operates retroactively to the very time that the policy came into existence[.]
2 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE § 30:3 (3d ed.1995). Therefore, it would be illogical to find that the legislature meant "cancellation" when they used the term "retroactively annulled."
Reviewing the plain language of the statute, I must conclude that RCW 48.18.320 does not apply automatically to all insurance contracts regardless of type. If this were the case, the distinction between occurrence policies and claims-made policies would be negated, which would not be a rational nor sensible interpretation of the statute. The distinction between the two types of insurance policies must be acknowledged. In recognizing the distinction, RCW 48.18.320 does not affect the cancellation of claims-made policies where the insurer had no notice of a claim or circumstance that occurred during the term of the policy.

III
There is a fundamental distinction between an occurrence policy and a claims-made policy. Risk for an occurrence policy attaches at the time that the injury, death, or damage occurs. Risk for a claims-made policy does not attach until the claim or circumstance is received by the insurer during the effective policy period. I would conclude that RCW 48.18.320 applies to those insurance contracts in which risk has already attached. Thus, the statute does not apply to claims-made policies in which no notice has been received by the insurer. Therefore, I would answer the first certified question in the negative.
OWENS and FAIRHURST, JJ., concur.
NOTES
[1] The dissent contends that we need to consider "when risk attaches to create liability" in order to answer the first certified question. Dissent at 874. Our objective is far less ambitious. Instead, it is merely to ascertain legislative intent from the language of the statute. See Watson, 146 Wash.2d at 954, 51 P.3d 66. The dissent's proposed analysis, while perhaps appropriate when interpreting the contract takes us far a field from the statute. Nothing in the statute can fairly be read as limiting its application to situations "when risk attaches to create [insurer] liability." Instead, this statute unambiguously applies to all insurance contracts. Its plain language requires only that the insured's risk of liability be implicated; it is silent about the insurer's risk of liability. It is the province of the legislature, not this court, to make the policy decision whether to change the focus of this statute from the insured's risk of liability to the insurer's risk of liability. See Duke v. Boyd, 133 Wash.2d 80, 88, 942 P.2d 351 (1997).
[2] The dissent correctly notes that "[w]here the Legislature uses certain statutory language in one instance, and different language in another, there is a difference in legislative intent." Dissent at 874 (quoting United Parcel Serv., Inc. v. Dep't of Revenue, 102 Wash.2d 355, 362, 687 P.2d 186 (1984)). We do not ignore this rule. To the contrary, we observe the rule by recognizing the term "annul" has a different meaning than the term "cancellation" found elsewhere in the chapter. While "cancellation" is used only for prospective actions, "annul" is used to include both prospective cancellations and ab initio rescissions. See BLACK'S LAW DICTIONARY 115 (3d ed.1933).
[3] Cancellation by an insured under RCW 48.18.300 is not a nullity as asserted by the dissent. Contra dissent at 874 n.5. RCW 48.18.320 does not prohibit insureds from properly canceling insurance policies. Rather it prohibits and voids agreements between insureds and insurers to retroactively annul a policy after a potentially covered event has occurred. It is an important difference the legislature has declared law.
[4] The policy uses the term "incident" where historically the term "occurrence" would have been used. See SER at 63. During oral argument, we were advised by counsel for ACIC that the policy uses the term "incident" instead of "occurrence" to describe an event for which coverage exists. These terms are interchangeable for our purposes.
[5] The dissent correctly observes that "RCW 48.18.320 does not prohibit the prospective cancellation of a policy for which injury, death or damage has yet to occur." Dissent at 874 (emphasis added). RCW 48.18.320 applies in this instance precisely because the death for which NAHC may be liable occurred prior to NAHC's agreement with ACIC to cancel the policy.
[6] The second certified question specifically asks whether the cancellation described in the first question is against the public policy of Washington State when no other insurance policies for coverage of claims are held by a hospital that has filed for bankruptcy. As conjectured by the concurrence/dissent, it is possible the Ninth Circuit asked the second question under an assumption that the statute would not apply to the cancellation described in the first question. Concurrence/dissent at 871. However, we find it unwise to speculate about possible assumptions the Ninth Circuit might have made but chose not to articulate in the certified question.
[1] However, as the majority concludes, by its plain language the statute does not distinguish between occurrence and claims-made policies.
[1] Julie Rhodes is the custodian of New American Health Care Corporation's (NAHC) patient and risk management files. In her declaration she stated that the hospital has no record of any complaint relevant to Steven Steen's treatment. ACIC Excerpt of Record (AER) at 21. She also stated that the hospital has no record of reporting to ACIC any event, circumstance, or claim that is relevant to Steven Steen's treatment. Id. Further, Rhodes knows of "no other files or collection of records ... that could conceivably relate to Steven Steen's hospitalization ... or any claims arising from that hospitalization." Id.

The record reflects that Joseph D. Hampton, attorney for NAHC, asked Michael E. Withey, Steen's attorney, to provide evidence of NAHC being on notice of Steen's potential wrongful death claim during the period NAHC was covered by ACIC. AER at 22-24. There is no evidence that Withey provided such evidence.
[2] The actual policies that NAHC held with ACIC contain the following language:

THIS IS A CLAIMS MADE AND REPORTED POLICY. This Policy applies only to CLAIMS that are first made against the INSURED and reported to the Company during the POLICY PERIOD, and that arise out of a MEDICAL INCIDENT or EVENT happening on or after the RETROACTIVE DATE.
. . . .
If a CLAIM is first made against the INSURED during the POLICY PERIOD, the INSURED must, as a condition precedent to its right to coverage under this Policy: (i) immediately give the Company written notice of the CLAIM; and (ii) immediately forward to the Company every demand, notice, summons, complaint, or other process received by the INSURED or the INSURED's representative.
. . . .
If the INSURED first becomes aware during the POLICY PERIOD of a CIRCUMSTANCE, the INSURED must, as a condition precedent to its right to coverage under this Policy, give the Company written notice of the CIRCUMSTANCE during the POLICY PERIOD.... If the INSURED does so, any CLAIM resulting from that CIRCUMSTANCE will be deemed to have been first made against the INSURED and reported to the Company during the POLICY PERIOD.
AER at 58, 80.
[3] It is not disputed that RCW 48.18.320 applies to occurrence policies. As stated above, occurrence policies provide coverage for any losses that occur within the policy period. The condition of receiving notice during the policy period is not required under such a policy. Thus, if there is injury, death, or damage that occurred during the occurrence policy period, no agreement may effectively annul the coverage of such injury, death, or damage.
[4] Where claims-made policies require notice within the term of the policy, courts have generally given this provision stringent and literal enforcement. JEFFREY W. STEMPEL, INTERPRETATION OF INSURANCE CONTRACTS: LAW AND STRATEGY FOR INSURERS AND POLICYHOLDERS § 31.3.3 (1994).
[5] The majority's conclusion that RCW 48.18.320 applies to even the proper cancellation of a claims-made policy would render the above-mentioned cancellation provision as well as RCW 48.18.300 (cancellation by insured) a nullity.
[6] RCW 48.18.320 is unique in that it uses the term "annul" to mean "rescind"a more commonly used term in contract law. "Annul" and "rescind" are basically the same. "Rescission means to abrogate or annul and requires the court to fashion a remedy to restore the parties to the relative positions they would have occupied if no contract had ever been made." Busch v. Nervik, 38 Wash.App. 541, 547, 687 P.2d 872 (1984) (emphasis added). See also Willener v. Sweeting, 107 Wash.2d 388, 397, 730 P.2d 45 (1986).