2014 OK 61

Tracey CHANDLER, Personal Representative of the Estate of David Wurtz, deceased, Plaintiff/Appellee,

v.

Mark W. VALENTINE, MD and Idabel Surgical Clinic, a professional corporation, Defendants,

and

Physicians Liability Insurance Company, Garnishee/Appellant.

No. 108,614.

Supreme Court of Oklahoma.

June 24, 2014.

As Corrected July 3, 2014.

Glendell Nix, Nix Law Group, PLLC, Edmond, Oklahoma and Jeremy Thurman, Oklahoma City, for Plaintiff/Appellee.

Barry K. Roberts, Norman, Oklahoma, for Plaintiff/Appellee.

Robert N. Naifeh, Jr., Sarah Lee Gossett Parrish, Derryberry & Naifeh, LLP, Oklahoma City, for Garnishee/Appellant.

COLBERT, C.J.

¶ 1 The issue in this matter is whether an insurer may agree to cancel a "claims made" policy with the knowledge that a potential claim is pending without violating the statutory prohibition on retroactive annulment of an insurance policy following the injury, death, or damage for which the insured may be liable. *See* Okla. Stat. tit. 36, § 3625 (2011). This Court holds that it may not and affirms the holding of the trial court.

FACTS AND PROCEDURAL HISTORY

¶ 2 Physicians Liability Insurance Company (PLICO) insured Defendant Mark Valentine pursuant to a claims made policy with a policy period from July 1, 2004, to December 31, 2006. On November 1, 2004, Valentine operated on David John Wurtz. As a result of Valentine's negligence during the operation, Wurtz died. On March 10, 2005, the Oklahoma Board of Medical Licensure held a hearing to determine whether Valentine should be disciplined. At the hearing, the Board revoked Valentine's license.

¶ 3 On March 14, 2005, Valentine sent a letter to his insurance agency which provided in part:

As we discussed, I last practiced on November 2, 2004, secondary to health reasons. In December 2004, I renewed my liability insurance policy for 2005, anticipating that I would return to the practice some time within the first several months of this year. This will not be the case, secondary to my licensure having been revoked in the state of Oklahoma.

Because of the circumstances and the unexpected financial hardship as a result, I

respectfully request that my policy for 2005 be cancelled, and I also request a consideration of receiving a refund of the premium value having been paid for the year 2005. In December, $6,870.60 was paid as an initial payment for the 2005 policy and in February another $4,436.85 payment was made.

A few days later, the agency forwarded the letter to PLICO along with a newspaper article dated March 12, 2005, that stated in part:

> The Oklahoma State Board of Medical Licensure and Supervision on Thursday also revoked the license of Idabel physician Dr. Mark Valentine....
>
> ....
>
> Valentine of Idabel was cited for performing surgery while impaired by the pain medication Vicodin at McCurtain Memorial Hospital.
>
> The Oklahoma medical board found Valentine guilty of unprofessional conduct, and his medical license was revoked. He can reapply in one year.

PLICO's Vice–President of Underwriting would later state in his deposition that, at the time PLICO cancelled the policy, he was aware of the article and considered the fact that Valentine was no longer licensed in PLICO's decision to cancel the policy.

¶ 4 On March 22, 2005, PLICO notified Valentine by letter that the policy had been cancelled effective March 10, 2005, with "Company's Decision" stated as the reason for cancellation and offered to sell him tail coverage. That letter was followed by another that addressed the premium refund issues and stated that the policy had been cancelled at Valentine's request.[1] On June 2, 2005, Wurtz' personal representative, Tracey Chandler, filed suit against Valentine and others for the wrongful death of Wurtz. Valentine forwarded the petition and summons served on him to PLICO on July 12, 2005. On July 19, 2005, PLICO sent Valentine a letter denying coverage because the claim was not made until after the policy was cancelled and asserting the policy exclusion for acts performed while under the influence of intoxicating substances.[2]

¶ 5 Valentine's debts were discharged in bankruptcy on February 1, 2006. Chandler filed a motion for summary judgment against Valentine in August of 2007. Valentine entered into a Consent Judgment with Chandler on December 5, 2007, in the amount of $2,250,000.00. The trial court granted summary judgment in favor of Chandler and ruled that Valentine was entitled to a set off by virtue of settlements with other parties in the amount of $1,275,000.00

¶ 6 Chandler filed garnishment proceedings against PLICO in May of 2008. Chandler asserted that Valentine is indebted to Chandler in the amount of $975,000.00 plus pre and post judgment interest. PLICO de-

---

1. The letter stated:
This letter will serve to advise you that we have cancelled your professional liability policy effective March 10, 2005 per your request as well as the request of your agent, OHA Insurance Agency. Please note that you signed a 30 month commitment with PLICO on June 22, 2004 and the policy referenced above indicated the cancellation provisions. It also indicated that the premiums for 2005 would be fully earned under your cancellation situation.
When your policy was cancelled by PLICO and the cancellation notice was processed by A.I. Credit based on payments made to date, there was a return premium of $1,986.67. However, the 2005 premium was full[y] earned by PLICO and you would actually owe the remaining premium for 2005 which would total $37,147. Due to your situation, PLICO is agreeable to applying the $1,986.67 toward the fully earned premium amount of $37,147 and forgiving you for the remaining balance of $35,183.33. Also, PLICO is forgiving you of

your 2006 premium which is a part of the same commitment.
Should you ever desire to have insurance again with PLICO and PLICO agrees to provide you professional liability coverage, the forgiven amount must be paid in addition to any premiums generated by the new policy. This issue arises out of the 30 month commitment that you signed as referenced above and a copy is attached for your review.

2. In its order granting the summary judgment that is the subject of this appeal, the trial court found:

> PLICO fails to offer any evidence that Dr. Valentine was in fact under the influence at the time of the event which gives rise to the medical negligence claim which is the subject of the judgment. PLICO has further failed to show a causal connection between Dr. Valentine's ingestion of Vicodin and the death of Mr. Wurtz.

nied any indebtedness asserting a lack of coverage under any insurance policy. Both Chandler and PLICO filed motions for summary judgment in the garnishment action. On July 16, 2010, the trial court entered summary judgment in favor of Chandler, holding that cancellation of the policy violated section 3625 of title 36 and was therefore void.

## STANDARD OF REVIEW

¶7 A motion for summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Okla. Stat. tit. 12, § 2056(C) (2011).

## ANALYSIS

¶8 Resolution of this matter requires an understanding of a "claims made" policy of liability insurance.

Under a claims made policy, coverage is only triggered when, during the policy period, an insured becomes aware of and notifies the insurer of either claims against the insured or occurrences that might give rise to such a claim....

In a 'claims made' policy, the notice is the event that invokes coverage under the policy. Clear notice of a claim or occurrence during the policy period is crucial, because allowing actual notice beyond the policy period would 'constitute an unbargained for expansion of coverage, gratis, resulting in the insurance company's exposure to a risk substantially broader than that expressly insured against in the policy.' [citations omitted] Claims made policies are often a more economical way to provide coverage for risks like professional responsibility, because the notice requirements allow an insurer to 'close its books' on a policy at the expiration date and thus 'attain a level of predictability unattainable under standard occurrence policies.' [citations omitted]

... Such a policy reduces the potential exposure of the insurer, thus reducing the policy cost to the insured.

*State ex rel. Crawford v. Indemnity Underwriters Ins. Co.*, 1997 OK CIV APP 39, ¶4, 943 P.2d 1099 (quoting *LaForge v. Am. Cas. Co.*, 37 F.3d 580, 583 (10th Cir.1994).)

¶9 "Occurrence liability policies, on the other hand, allow for notice after the term of the insurance contract, so long as the insurable event occurred during the term, because these policies historically covered identifiable events such as collision, fire and war." *Id.*, ¶5. "Notice provisions contained in such occurrence policies were 'included to aid the insurer in investigating, settling, and defending claims,' not as a definition of coverage." *Id.* (quoting *Slater v. Lawyers' Mut. Ins. Co.*, 227 Cal.App.3d 1415, 1422, 1423, 278 Cal.Rptr. 479 (1991)).

¶10 The principal advantage of the claims made policy for insurers is the avoidance of "tail liability" during the lapse of time between the date of the liability-producing event and the date of the claim. Carolyn M. Frame, *'Claims–Made' Liability Insurance: Closing the Gaps with Retroactive Coverage*, 60 Temple L.Q. 165, 166 & n. 7 (1987). Thus, in a claims made policy the risk of tail liability is borne by the insured, absent the purchase of tail coverage for claims filed after the cancellation or termination of a policy. *Id.* at 182. However, insurers and policies of insurance are at all times subject to the regulation and limitations imposed by the Oklahoma Insurance Code which constitutes all of title 36 of the Oklahoma Statutes. Okla. Stat. tit. 36, § 109 (2011) ("No person shall transact a business of insurance in Oklahoma without complying with the applicable provisions of this Code.").

¶11 The question in this matter is whether section 3625 of the Insurance Code applies to a claims made policy. The section provides:

No insurance contract insuring against loss or damage through legal liability for the bodily injury or death by accident of any individual, or for damage to the property of any person, shall be retroactively annulled by any agreement between the insurer and the insured after the occurrence of any such injury, death, or damage

for which the insured may be liable, and any such attempted annulment shall be void.

Okla. Stat. tit. 36, § 3625 (2011). The provision dates to the enactment of the Insurance Code in 1957.

¶ 12 PLICO argues that, because the provision predates the wide-spread adoption of claims made policies in Oklahoma, the provision could not have been intended to apply to claims made policies. PLICO further argues that, because the provision makes the "occurrence" of damage or injury the event that triggers its operation, it must be intended to apply only to occurrence policies.

¶ 13 The primary goal of any statutory analysis is the determination of legislative intent which begins with an examination of the text of the provision. *TRW/Reda Pump v. Brewington,* 1992 OK ¶ 31, 5, 829 P.2d 15. The text of section 3625 clearly applies to all contracts that provide insurance coverage for damage, injury, or death. The provision's focus is the protection of injured third parties, not on policy provisions. It limits the ability of the parties to an insurance contract to manipulate the term of policy coverage in a way that deprives an injured third party from asserting a claim. The Oklahoma Legislature has not amended the statute since its adoption in 1957 to limit its operation to occurrence policies and it is not within this Court's purview to do so. However, the difference in the nature of the risks protected by claims made versus occurrence policies requires a slightly different application of the provision to claims made policies.

¶ 14 As to an occurrence policy, the provision is straightforward because the date of occurrence is fixed by the liability-producing event and no agreement to cancel a policy may cut off the right to recover under the policy. Under a claims made policy, however, the date of the claim is unknown and liability generally does not attach until a claim is submitted by the insured. Therefore, section 3625 applies to a claims made policy only when there is an agreement to cancel the policy in a way that cuts off a potential claim and the insurer is actually aware [3] at the time of agreement of the act or acts that will potentially result in a claim.[4] Thus, the question in this matter becomes whether there was an agreement between the insured and the insurer to cancel the policy and whether PLICO knew of the alleged malpractice that could lead to a claim against the policy.

¶ 15 Faced with difficulty maintaining adequate reserves, PLICO converted its occurrence policies to claims made policies effective July 1, 2004. Under the claims made policies, physicians who wanted to continue PLICO coverage had to agree to thirty-month policies that could be cancelled only in the event of moving the medical practice out of state, death, disability, or retirement. There was no provision for cancellation based on the revocation of a medical license and the parties agree that Valentine had no right to cancel the policy. The parties disagree as to the effect of Valentine's lack of right to cancel the policy. PLICO urges that Valentine's inability to cancel the policy establishes that

3. Notice of existence of a potential claim for the purpose of application of section 3625 need not satisfy the reporting provisions of the policy. Section 3625 addresses agreements to cancel coverage, not the duties of the parties to the insurance contract concerning notice of a claim. An insurer's lack of notice of a potential claim may be a basis for denying coverage. It is not, however, a legitimate basis for cancellation of a policy when it has actual knowledge of a potential claim.

4. This Court acknowledges the decision of the Washington Supreme Court in *Am. Cont'l Ins. Co. v. Steen,* 151 Wash.2d 512, 91 P.3d 864 (2004), which construed a Washington provision that is identical to Oklahoma's section 3625 under very similar facts. The decision appears to be the first and only published decision to apply the provision to a claims made policy. That court held that its provision was not limited to occurrence policies and therefore the claims made policy could not be cancelled after the occurrences which led to a patient's death.

Today's holding in this matter is less broad as to a claims made policy. Today's decision acknowledges that the risk in a claims made policy is the risk of a claim, not the occurrence. Nevertheless, when an insurer knows of the potential claim and agrees to cancel the policy in a way that defeats assertion of a claim until after the cancellation of the policy, the cancellation violates section 3625 and is therefore void. This Court believes its application of the statute is consistent with the fundamental difference in the nature of the risk insured by the claims made versus the occurrence policy.

the cancellation was the unilateral act of the insurer.[5] PLICO's argument ignores the obvious; there was an agreement between the insured and the insurer to cancel the agreement.

¶16 The evidentiary materials attached to the personal representative's motion for summary judgment clearly establish that a written offer was made by the insured to cancel the policy and obtain a refund of policy premiums. It is equally clear that PLICO accepted that offer with actual knowledge of the events that would certainly generate a wrongful death action against the insured. The agreement to cancel, however, was squarely within the statutory prohibition on annulment contained in section 3625 and thus it was void. The policy remained in effect in July, 2005, when the wrongful death action was filed. PLICO's conduct in cancelling the policy, when it knew that the actions of its insured during the policy period would be the basis of an impending claim, indicates, at best, ignorance of the section 3625 prohibition. At worst, it indicates collusion with its insured to deprive the decedent's estate of the benefits of coverage. The trial court was correct to grant summary judgment to the personal representative of the estate.

CERTIORARI PREVIOUSLY GRANTED; OPINION OF COURT OF CIVIL APPEALS VACATED; JUDGMENT OF TRIAL COURT AFFIRMED.

CONCUR: COLBERT, C.J., REIF, V.C.J., KAUGER, WATT, EDMONDSON, GURICH, JJ.

DISSENT: WINCHESTER, TAYLOR, COMBS, JJ.

---

5. In its cross motion for summary judgment, PLICO offered another justification for its assertion that it unilaterally cancelled the policy. It argued that the revocation of Valentine's medical license permitted cancellation of the policy because it constituted "[t]he occurrence of a change of risk that substantially increases any hazard insured against after insurance coverage has been issued or renewal." However, the policy excludes specifically "claims arising out of professional healthcare services rendered by any

individual who was not authorized to provide such services due to the suspension; revocation; surrender; or restriction of or failure to obtain, the proper professional license in the state or locality in which the professional healthcare services were provided." Therefore, the March 10, 2005, revocation of Valentine's medical license eliminated the risk of hazzard as PLICO would not have been liable for the payment of any claim for any healthcare he provided after that date.