37 Wn. App. 316 (1984)
679 P.2d 953
LAWRENCE E. NELSON, ET AL, Plaintiffs, BARRIE COLE, ET AL, Appellants,
v.
GREAT NORTHWEST FEDERAL SAVINGS AND LOAN ASSOCIATION, Respondent.
No. 11086-1-I.
The Court of Appeals of Washington, Division One.
April 11, 1984.
As amended by order April 20, 1984.
Davies, Pearson & Anderson, P.S., Vincent L. Gadbow, and John C. Kouklis, for appellants.
Sanchez, Martin, Paulson & Mitchell, J. Larry Paulson, and Anna M. Laurie, for respondent.
[As amended by order of the Court of Appeals April 20, 1984.]
SCHOLFIELD, J.
Barrie and Doris Cole, husband and wife, appeal a summary judgment in favor of Great Northwest Federal Savings and Loan Association, denying specific *317 performance of an agreement for purchase and sale of a condominium. We affirm.
In August 1978, a mortgage from S T & D Development, Inc., the developer of Park Place condominiums, to Great Northwest was recorded to secure payment of a loan in the amount of $1,350,000 for construction of Park Place condominiums. Before the units were completed, the Coles, on September 7, 1979, executed a "Condominium Purchase and Sale Agreement", agreeing to buy one of the units for $66,100. The Coles paid a $1,000 deposit.
On January 18, 1980, the "Horizontal Property Regime Declaration" for the Park Place condominiums was recorded with the Pierce County Auditor. Meanwhile, the Coles obtained financing for their purchase of the condominium. On August 4, 1980, Great Northwest recorded a deed of trust from S T & D to secure payment of an additional $426,000. The Coles and other purchasers were assured several times by S T & D that the condominium would be completed, notwithstanding delays in construction. There were several extensions of the agreement between the Coles and S T & D; the final one, dated October 30, 1980, extended the purchase and sale agreement through December 20, 1980, and stated:
Purchaser acknowledges Seller is in serious financial condition with reference to the subject property. Therefore, notwithstanding anything contained herein to the contrary, Seller shall be under no obligation to proceed with the sale of the subject property as called for herein in the event Great Northwest Federal Savings and Loan Association forecloses its mortgage on the subject property or in the event Seller gives Great Northwest a deed to the subject property in lieu of the foreclosure of said mortgage.
In late October 1980, with the project approximately 90 percent complete, S T & D abandoned the development. Great Northwest hired security guards for the premises, and in November 1980, arranged with the City of Puyallup to maintain power and utilities to the premises. By December 1980, the Coles had obtained the consent of the *318 seller, S T & D, and Great Northwest to move into the unit. At that time, they had expended approximately $3,000 on improvements. On May 15, 1981, Great Northwest purchased the condominiums at a trustee's sale arising out of a nonjudicial foreclosure of the deed of trust recorded in August 1980. In June 1981, Great Northwest informed the Coles that the price of their condominium would have to be increased. The Coles filed suit for specific performance of their condominium purchase and sale agreement. Great Northwest moved for summary judgment and dismissal, which the trial judge granted.
The Coles contend that they were entitled to pay their pro rata share of the debt secured by the deed of trust and thereby protect their apartment from the foreclosure.[1] They also argue that Great Northwest was estopped to deny the existence of the Coles' rights under the purchase agreement and that their expenditure of money improving their apartment gave them an enforceable interest in real estate.
The resolution of all of these contentions depends upon whether the Coles acquired an interest in real estate through the agreement entered into with S T & D for the purchase of a condominium apartment. We hold they did not and affirm the trial court.
[1] The document relied upon by the Coles is entitled "Condominium Purchase and Sale Agreement". It describes the $1,000 deposit as earnest money and contemplates closing of the transaction upon receipt of a satisfactory title report. The agreement calls for title to be conveyed by statutory warranty deed, free of encumbrances or defects, except for the condominium declaration and covenants and restrictions essential to condominium ownership. The agreement contains no language purporting to convey to *319 the Coles a legally enforceable interest in real estate. The entire agreement is subject to completion of construction of the building. The Coles were entitled to possession upon closing, but the transaction was never closed.
In Rigby v. State, 49 Wn.2d 707, 306 P.2d 216 (1957), the issue was whether purchasers under an earnest money agreement had a right to possession prior to closing. The court held they did not, saying at page 710:
This theory is not sound. The earnest-money agreements are only the first of a number of instruments comprising the terms of the transactions which defined the rights of the parties thereto. They give no right of possession to either land or houses until the transactions are closed. This entails three additional requirements subsequent to the earnest-money agreements: (1) the approval of credits, (2) the delivery of mortgages, and (3) the delivery of deeds. When all of these steps have occurred and the transactions are closed, the right to possession follows as a matter of law. The earnest-money agreements do not give any rights of possession before that time. The purchasers were, therefore, not entitled to possession of the land during the construction of the houses and are not consumers under the statute.
The earnest money agreements analyzed in Rigby were identical to the purchase agreement relied on by the Coles insofar as the effect of the agreements on the right to possession and conveyance of an interest in real estate are concerned. The agreements do not contain language purporting to convey an interest in real estate; moreover, they do not display an intent to convey because they are conditioned upon satisfaction of the specified terms. See also Litel v. Marsh, 33 Wn.2d 441, 446, 206 P.2d 300 (1949).
The Coles rely upon State Sav. & Loan Ass'n v. Kauaian Dev. Co., 50 Hawaii 540, 445 P.2d 109 (1968), which held that certain "contracts of sale" for individual units in a condominium, under the laws of the State of Hawaii, conveyed an interest in the purchasers superior to the holder of a mortgage given to secure the construction loan where the contracts were entered into prior to the mortgage and *320 the mortgage was taken with knowledge of the contracts.
Detailed provisions of the contracts of sale are not recited in the opinion. However, from the discussion of them in the opinion, it reasonably appears that in the contracts the purchasers agreed to buy individual units and the seller agreed to sell. The purchase price was due and payable in full upon commencement of construction. The purchaser was entitled to possession upon completion of construction. It appears likely, therefore, that the contracts contained language which the Hawaii court interpreted as conveying an interest in real estate which could be possessed as soon as the condominium building was completed. The court also relied upon public policy in reaching its decision.
Such a contract is readily distinguishable from the contract the Coles entered into with S T & D, where there is no evidence of intent to convey until clear title is obtained and the transaction closed. This distinction makes the reasoning of the State Sav. & Loan case inapplicable here.
In contending they had a right to pay off their pro rata share of the obligation secured by the deed of trust and thus leave their apartment unaffected by the foreclosure proceedings, the Coles rely upon RCW 64.32.070,[2] which provides in part as follows:
(2) In the event a lien against two or more apartments becomes effective, the apartment owners of the separate apartments may remove their apartment and the percentage of undivided interest in the common areas and facilities appurtenant to such apartment from the lien by payment of the fractional or proportional amounts attributable to each of the apartments affected.
The prorated discharge provisions of RCW 64.32.070 *321 apply only to apartment owners. "Apartment owner" is defined in RCW 64.32.010(2) as follows:
"Apartment owner" means the person or persons owning an apartment, as herein defined, in fee simple absolute or qualified, by way of leasehold or by way of a periodic estate, or in any other manner in which real property may be owned, leased or possessed in this state, together with an undivided interest in a like estate of the common areas and facilities in the percentage specified and established in the declaration as duly recorded or as it may be lawfully amended.
Having no title or legally enforceable right to possession, the Coles do not qualify as apartment owners and thus had no right under RCW 64.32.070 to pay the fractional share of the debt.
[2] The Coles also argue that because Great Northwest gave them permission to take possession of the apartment, it should be estopped from denying the Coles have a legally enforceable interest in real estate. The Coles' argument, if accepted, would convert mere oral permission to take possession into a legally enforceable interest in real estate. The Coles cite no authority for this proposition and we know of none.
Estoppel requires:
(1) an admission, statement, or act inconsistent with the claim afterwards asserted, (2) action by the other party on the faith of such admission, statement, or act, and (3) injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement or act.
Wagner v. Wagner, 95 Wn.2d 94, 102, 621 P.2d 1279 (1980).
There is no inconsistency between permitting bare possession under the circumstances of this case and later asserting the Coles have no legally enforceable interest in real estate and therefore are not apartment owners under RCW 64.32.070. The Coles' taking possession because they had permission of Great Northwest to do so does not amount to an "action by the other party on the faith of such admission, statement, or act". 95 Wn.2d at 102. The *322 only action they took was to move into the apartment. Neither the permission granted by Great Northwest nor the action taken by the Coles pursuant thereto is material to the basic issue in this case, which is the nature of the interest in real estate, if any, acquired by the Coles in their contract with S T & D. The trial court was correct in holding as a matter of law that Great Northwest was not estopped to foreclose its deed of trust in the manner in which it was done.
Affirmed.
CORBETT, A.C.J., and SODERLAND, J. Pro Tem., concur.
NOTES
[1] The Coles refer to foreclosure of the construction mortgage in their brief. The record, however, does not reveal that the mortgage was ever foreclosed; Great Northwest instead obtained title by foreclosing on the deed of trust. In any case, we are satisfied that if Great Northwest had foreclosed on the mortgage, the Coles' interest would have been eliminated.
[2] Great Northwest contends that because the applicability of the Horizontal Property Regimes Act (Condominiums), RCW 64.32, was not raised at trial, we are precluded from considering it on appeal. Sections of the statute are relied upon by the Coles, however, and we feel it is central to the question of ownership raised here. A comprehensive discussion of the Coles' contentions requires consideration of this statute. Moreover, because we affirm, there is no prejudice to Great Northwest.