[Nos. 5799–9–II; 5911–8–II; Division Two. August 14, 1984.]
6164–3–II; 6189–9–II.

LEWIS W. BUSCH, JR., ET AL, *Appellants,* v. RICHARD A. NERVIK, ET AL, *Respondents.*

*Brian A. Morrison,* for appellants.

*Jay B. Roof, Stephen E. Oliver, Evelyn Dennis, Clifford L. Stilz, Jr.,* and *John F. Raymond, Prosecuting Attorney,* for respondents.

PETRIE, J.—These four appeals, consolidated for review, are from summary judgments (1) rescinding several sales of real property in Jefferson County; (2) granting restitution to the successive purchasers in the amount each purchaser paid for the property; (3) awarding reasonable attorney's fees to the purchasers; but (4) dismissing all claims for damages sought from the title insurance company which insured the title and also acted as escrow agent, and from Jefferson County. We affirm in part and reverse in part.

John D. and Mary K. Swift, real estate developers, owned real estate located next to the Dosewallips River. As general partners of a limited partnership designated Lazy C Properties, they executed several earnest money agreements with various parties in 1967 and 1968 for the sale of the real property at issue here. These agreements described the property sold as either lot 158 or lot 159, of Lazy C Ranch, Division II, "according to the Plat thereof recorded in the office of the Auditor of Jefferson County." In fact, no final plat had been recorded. All these agreements were eventually canceled for nonpayment of the purchase price.

In 1969, the Swifts submitted a proposed plat of Lazy C Ranch, Division II, to Jefferson County. It is undisputed that each lot is less than 5 acres and the plat contains 34 lots. The County denied Swifts' application to file their plat in part because of the danger of flooding. Nevertheless, the Swifts continued to sell lots within the unrecorded subdivision.

In May 1970, Richard and Virgil Nervik signed an earnest money agreement to purchase "Lot 159." A year later, their daughters, Dixy Lee and Rachel, signed an earnest money agreement to purchase "Lot 158." The Nerviks ultimately paid the full purchase price, and on June 7, 1979 Swifts executed and delivered statutory warranty deeds to Nerviks. Both deeds described the property by metes and bounds and also contained the reservation that the grantor "reserves the right to plat the foregoing parcel" as either lot 158 or 159 of Lazy C Ranch, Division II.

The Nerviks improved lot 159 to the extent that Richard and Virgil were able to live on it, but lot 158 was not substantially improved. In mid–1979 Nerviks negotiated the sale of both lots to Lewis W. Busch and Norma Jean Busch, husband and wife, plaintiffs herein. The Nerviks sold both lots to the Busches and executed and delivered statutory warranty deeds to Busches on May 15, 1979. These deeds, too, described the property by metes and bounds, but one of the deeds additionally described the property as "Lot 158, Division 2, Lazy C." The Jefferson County Auditor accepted both deeds for recording on May 23, 1979. Transamerica Title Insurance Company insured the title and also acted as escrow agent, drawing both deeds and closing the transaction.

In December 1979 the Dosewallips River flooded and washed out the only road to the property. It was uncertain whether the road would be repaired. This action followed in the next spring.

Busches filed a complaint against the Nerviks, the Swifts, Jefferson County, and Transamerica. Insofar as necessary to resolve the issues presented by these appeals, Busches

alleged that both lots are "encumbered" because, having been subdivided and sold contrary to statute, no building, septic tank, or other development permit can be issued by the County. Accordingly, they sought damages against Nerviks for breach of their contract to convey property free from encumbrances and against Nerviks and Swifts for damages resulting from their violations of RCW 58.17.210.[1] Alternatively, Busches sought rescission of the two deeds by which Nerviks conveyed the property to them. Busches sought damages against Transamerica for loss suffered by breach of the contract which insured title free from encumbrances, and also for professional negligence for failure to disclose a known defect in the title. Finally, Busches sought damages against Jefferson County for losses suffered by reason of (1) the County Auditor's acceptance and recording of the Nervik–Busch deeds knowing that no final plat of Lazy C, Division II had ever been filed and made a matter of record; and (2) the County Prosecuting Attorney's failure, under a "duty" imposed by RCW 58.17.200, to enjoin

---

[1]Since 1974 RCW 58.17.210 has provided:

No building permit, septic tank permit, or other development permit, shall be issued for any lot, tract, or parcel of land divided in violation of this chapter or local regulations adopted pursuant thereto unless the authority authorized to issue such permit finds that the public interest will not be adversely affected thereby. The prohibition contained in this section shall not apply to an innocent purchaser for value without actual notice. *All purchasers' or transferees' property shall comply with provisions of this chapter and each purchaser or transferee may* recover his damages from any person, firm, corporation, or agent selling or transferring land in violation of this chapter or local regulations adopted pursuant thereto, including any amount reasonably spent as a result of inability to obtain any development permit and spent to conform to the requirements of this chapter as well as cost of investigation, suit, and reasonable attorneys' fees occasioned thereby. Such purchaser or transferee may *as an alternative to conforming his property to these requirements, rescind the sale or transfer and recover costs of investigation, suit, and reasonable attorneys' fees occasioned thereby.*

(Italics ours.)

In 1970, RCW 58.17.210 was slightly but, for our purposes, not significantly different from the present. We need not and do not determine which form of the statute governs.

Swifts from selling their lots.[2]

Nerviks cross–claimed against Swifts for breach of warranty and violation of RCW 58.17.210, alternatively seeking rescission of the Swift–Nervik deeds. Nervik also sought damages from Transamerica for breach of fiduciary duty and professional negligence.

On separate motions for summary judgment the trial court (1) rescinded the Nervik–Busch sales, granted Busches full restitution of the purchase price plus reasonable attorney's fees, and ordered reconveyance of the property upon payment of those amounts (Nerviks' appeal); (2) rescinded the Swift–Nervik sales, granted Nervik full restitution of the purchase price (which was less than the sales price Nerviks received from Busches) plus reasonable attorney's fees, and ordered reconveyance of the property upon payment of those amounts (Swifts' appeal); (3) dismissed Busches' claim and Nerviks' cross claim against Transamerica (both Busches' and Nerviks' appeals); and (4) dismissed Busches' claim against Jefferson County (Busches' appeal).

We focus first on Swifts' appeal because they contend former RCW 58.16, not RCW 58.17, applies under the facts of this case even though RCW 58.17 became effective August 11, 1969, prior to Swifts' sales to Nerviks. Though both chapters regulate the subdivision of land, former RCW 58.16 was expressly repealed when RCW 58.17 was enacted in 1969. RCW 58.17 has been held to apply prospectively only. *Gilmore v. Hershaw*, 83 Wn.2d 701, 521 P.2d 934 (1974).

---

[2]RCW 58.17.200 provides:

"Whenever any parcel of land is divided into five or more lots, tracts, or parcels of land and any person, firm or corporation or any agent of any of them sells or transfers, or offers or advertises for sale or transfer, any such lot, tract, or parcel without having a final plat of such subdivision filed for record, the prosecuting attorney shall commence an action to restrain and enjoin further subdivisions or sales, or transfers, or offers of sale or transfer and compel compliance with all provisions of this chapter. The costs of such action shall be taxed against the person, firm, corporation or agent selling or transferring the property."

Swifts do not contend that they come within any of the statutory classifications which declare RCW 58.17 inapplicable. *See* RCW 58.17.040. Rather, Swifts' theory is that, because they entered into earnest money agreements on both lots with other parties in 1967 and 1968 (prior to the effective date of RCW 58.17), the predecessor statute applies. Resolution of the issue is significant because neither statutory nor common law rescission was a remedy available to a vendee of unplatted land subject to the platting provisions of former RCW 58.16. *Gilmore v. Hershaw, supra.* Rescission is an express, statutory remedy under RCW 58.17.

As previously noted, all agreements executed by Swifts in 1967 and 1968 on lots 158 and 159 had been canceled by Swifts before they executed the Nervik agreements in 1970. Nevertheless, those agreements are in the record, and they provide that, if, during the 10 months commencing with the second succeeding calendar month after execution of the agreements, the purchasers made monthly payments in an amount equal to the original sum receipted for, then, on the first day of the 12th month following execution of the agreements

the seller and the purchasers shall execute a contract in the form hereto annexed with monthly payments provided therein equal to the monthly payments provided in this earnest money agreement and with interest on the deferred balance of the principal at the rate fixed in this earnest money agreement for determining credit on the down payment.

There is no indication that a specific contract form was annexed to the earnest money agreements, and, as indicated previously, no final plat had then (or ever) been recorded by the auditor of Jefferson County. Though these agreements provided that, during their term, the "purchasers shall pay the real property taxes on the real property subject to this earnest money agreement," they did not expressly grant a right of possession of the property to the purchasers.

 Swifts' ability to specifically enforce these agreements is doubtful to say the least. *See Hubbell v. Ward,* 40 Wn.2d 779, 246 P.2d 468 (1952). Swifts did not *sell* the land prior to August 11, 1969. They simply agreed, at some future time (if specified events transpired), to enter into an agreement (the precise terms of which had not yet been fully negotiated) *to sell* the individual lots. *See Nelson v. Great Northwest Fed. Sav. & Loan Ass'n,* 37 Wn. App. 316, 679 P.2d 953 (1984). We fail to see how the Swifts obtained any vested right to continuing protection afforded by the statute that was repealed before they sold any property to the Nerviks. Furthermore, any agreements Swifts entered into prior to August 1969 were not in *reliance* on former RCW 58.16; they were in *defiance* of that statute. We conclude, therefore, that RCW 58.17 governs the issues to be resolved by these appeals.

By filing their motion for summary judgment against the Swifts, the Nerviks invoked the alternative remedy of rescission provided by RCW 58.17.210. That statute provides that the purchaser may, upon rescission, recover "cost of investigation, suit, and reasonable attorneys' fees occasioned thereby." The right granted is purely statutory; neither fraud nor breach of warranty need be alleged or proved. The trial court did not err by ordering rescission on Nerviks' motion for summary judgment.

 No party contends that the statutory measures of recovery provided in RCW 58.17.210 constitute the total measure of the remedies available upon rescission. Indeed, the wording of the statute lends itself to the interpretation that the statutory measures simply *augment* the usual panoply of measures which flow from a purchaser's common law right of rescission. We so hold.

 Rescission means to abrogate or annul and requires the court to fashion a remedy to restore the parties to the relative positions they would have occupied if no contract had ever been made. Rescission is an equitable remedy and requires the court to fashion an equitable solution. The circumstances of each particular case must largely determine

what is necessary for one party to do in order to place the other *in status quo. Rummer v. Throop,* 38 Wn.2d 624, 231 P.2d 313 (1951); *Hopper v. Williams,* 27 Wn.2d 579, 179 P.2d 283 (1947); *Hackney v. Sunset Beach Invs.,* 31 Wn. App. 596, 644 P.2d 138 (1982); *Taylor v. Balch Land Dev. Corp.,* 6 Wn. App. 626, 495 P.2d 1047 (1972).

In the case at bench, the court simply required the Nerviks to tender a deed of reconveyance to the Swifts upon payment by Swifts of the amount of the purchase price Busches paid Nerviks for the land in 1979. This was an erroneous measure, possibly induced by the posture in which the case was presented to the trial court. We remand for the purpose of applying a more appropriate remedy. We direct Nerviks to tender a deed of reconveyance to Swifts upon payment of the amount of the purchase price paid including interest, plus the enhanced value resulting from Nerviks' reasonable improvements to the land, *Hackney v. Sunset Beach Invs., supra,* less the amount of reasonable rental value of the land during the Nerviks' possession, *Rummer v. Throop, supra,* plus the statutory measure of recovery authorized by RCW 58.17.210 (including the amount of reasonable attorney's fees incurred in the defense of Busches' complaint). We specifically do not include a setoff for the amount of taxes paid by the Swifts because they quite patently paid those taxes as volunteers.

The remedy we have fashioned for the Swift–Nervik transaction applies equally to the Nervik–Busch transaction.

The issues remaining on appeal pertain only to the dismissal of Transamerica and Jefferson County. Because of the comprehensive nature of the remedy we have fashioned, we find no reason to pursue the Busches' and Nerviks' appeal against the orders dismissing their cross claims against Transamerica and Busches' appeal against the order dismissing Jefferson County. There is no indication in the record that Busches or Nerviks contended that Transamerica engaged in the unauthorized practice of law. *See Bowers v. Transamerica Title Ins. Co.,* 100 Wn.2d 581,

675 P.2d 193 (1983). Furthermore, we do not find the property "encumbered" as contended by Nerviks and Busches. *See Crown Cascade, Inc. v. O'Neal,* 100 Wn.2d 256, 668 P.2d 585 (1983). Neither do we find unconscionable the exclusion clause in Transamerica's policy which expressly excepts from coverage "limitation by law or governmental regulation with respect to subdivision, use, enjoyment or occupancy." Finally, we hold that Busches had no valid cause of action against Jefferson County by reason of any act or failure to act of its prosecuting attorney or auditor. In short, we find no error in the trial court's dismissal orders and see no need to prolong this opinion further.

Because we cannot, at this point in time, determine which of the three major protagonists, if any, substantially improved their respective positions by reason of this appeal, costs on appeal, including such reasonable attorney's fees as may be allowable under RCW 58.17.210, will abide the ultimate disposition following resolution of issues as specified herein. Costs on appeal incurred by Jefferson County and Transamerica are assessed against such of the other party (or parties prorated equally) whose appeal forced Jefferson County or Transamerica as parties respondent in these appeals.

Orders on appeal are affirmed in part and reversed in part as set forth herein.

PETRICH, C.J., and WORSWICK, J., concur.