**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| CORY JESPERSEN and MELISSA JESPERSEN, husband and wife,<br><br>Appellants,<br><br>v.<br><br>CLARK COUNTY, a political subdivision of the State of Washington; and DOUGLAS LASHER, Clark County Treasurer,<br><br>Respondents. | No. 48653-9-II<br><br><br><br>PUBLISHED OPINION |

SUTTON, J. — This appeal arises after Cory and Melissa Jespersen purchased property at a tax foreclosure auction without any warranty of title by Clark County. After the sale, the Jespersens discovered that the property had been illegally subdivided years earlier. They demanded that the County rescind the sale and sued the County when the County refused.

We hold that (1) the plain language of chapter 84.64 RCW does not provide the right of rescission for a purchase at a tax foreclosure sale of an "as is" lot, and RCW 58.17.210 does not control, (2) because the County expressly disclaimed any warranty of title and the Jespersens bought the lot "as is," the doctrine of caveat emptor applies, (3) there was no failure of consideration due to a frustration of purpose and, thus, the Jespersens do not have a common law right of rescission, and (4) the Jespersens' constitutional claims fail. Therefore, we affirm the superior court's orders denying the Jespersens' summary judgment and granting summary judgment in favor of the County.

FACTS

I. Background

A. Parcel History

In 1998, Michael and Mickey Anderson, owners of tax lots 26 and 27,[1] requested a legal lot determination from the County. In response, the County published a development review decision that stated that lots 26 and 27 were created on May 9, 1978, in violation of the County short plat ordinance. The decision concluded that "the County cannot recognize tax lots 26 and 27 as separate lots, but the parcel containing both tax lots 26 and 27 is recognized as one legal lot of record." Clerk's Papers (CP) at 44. A year later, the Andersons requested a public interest exception from the County, asking the County to recognize lot 26 and lot 27 as separate legal lots of record. The County published a development review decision and approved the request subject to conditions, including a wetland delineation for lot 27 and a possible boundary line adjustment if a home site could not be found on lot 27.[2]

---

[1] Lot 26 is a 6.8 acre parcel with an existing residence. Lot 27 is a 2.89 acre hillside vacant lot with a tributary running through the western portion. Lot 27 is located in a ten-acre minimum zone area and is bordered by a creek along the north and wetlands on the north and south.

[2] Clark County Code (CCC) 40.530.010(C)(1)(b) provides:

> Any lot, use, or structure which, in whole or part, is not in conformance with current zoning requirements shall be considered as follows:
>
> . . . .
>
> b. Illegal Nonconforming. Lots, uses and structures which were not in conformance with applicable zoning and/or platting regulations at the time of creation or establishment. Illegal nonconforming lots, uses and structures shall be discontinued, terminated or brought into compliance with current standards.

CP at 78.

In 1999, instead of meeting or appealing the conditions, the Andersons sold lot 26, illegally subdividing it from lot 27. In 2010, the County initiated foreclosure proceedings under chapter 84.64 RCW against the Andersons for delinquent property taxes for lot 27. Christian Amae purchased lot 27 in a County tax foreclosure auction in 2010.

B. TAX FORECLOSURE AUCTION AND PURCHASE

In 2013, the County again initiated foreclosure proceedings for delinquent property taxes for lot 27. In 2014, the County conducted a tax foreclosure auction for lot 27 that is the subject of this appeal.

The County used an automated system to register bidders and track bidding during the auction. The County required each prospective online bidder to accept the County's terms of sale, as posted on the auction site, before bidding on properties in the auction. The terms provided in relevant part:

> Bidders are required to conduct any research of due diligence they wish to conduct prior to bid submittal. **A bid is an irrevocable offer to purchase property and once made, is a binding contract.**
>
> . . . .
>
> The County does not guarantee that all properties are buildable lots. All properties are offered for sale on a "where is" and "as is" basis without any representation or warranty, expressed or implied. It is the responsibility of the purchaser to do their own research as to the use of the properties for their intended purpose and to inspect the property personally to determine if it will be suitable for the purposes for which it is purchased.
>
> . . . .
>
> **Research and Inspect Thoroughly Before You Bid**
> Prospective purchasers are urged to examine the title, location and desirability of the properties available to their own satisfaction **prior** to the sale. The County Treasurer makes no warranty, either expressed or implied, relative to the usability, location, property lines, or topography.

**Properties are sold "AS IS"**
ALL PROPERTIES ARE SOLD AS IS. The sale of these properties should not, in anyway, be equated to real estate sales by licensed sales people, brokers or realtors. The Treasurer's Office makes no guarantee, expressed or implied, relative to the title, location or condition of the properties for sale.

. . . .

**BY SUBMITTING A BID, YOU AGREE TO THE TERMS OF THE SALE AS POSTED AT THE TIME BID IS SUBMITTED.**

**ALL SALES ARE FINAL. THERE ARE ABSOLUTELY NO REFUNDS.**

CP at 146-48. Additionally, on its property tax sales webpage, the County posted the following in large typeface:

ALL PROPERTIES ARE SOLD "AS IS." Prospective bidders should exercise due diligence when considering bidding on a property. The sale of these properties should not, in anyway, be equated to real estate sales by a (*sic*) licensed salespeople, brokers or realtors. The County of Clark makes no guarantee or warranty of any kind, expressed or implied, relative to the title, legal lot determination, zoning classification, building permit eligibility, location or condition of the properties for sale. Property taxes delinquent and currently due will be paid from the proceeds of the sale.

CP at 362 (boldface omitted). In regular size typeface within the property tax sales webpages, the County also posted the following relevant information:

All parcels are sold "as is" and all sales are final. The sale of these properties should not, in anyway, be equated to real estate sales by licensed salespeople, brokers or realtors. The County of Clark makes no guarantee or warranty of any kind, expressed or implied, relative to the title, legal lot determination, zoning classification, building permit eligibility, location or condition of the properties for sale. Potential purchasers should seek the advice of a real estate attorney if additional information is needed.

CP at 364. Prior to and during the auction at bar, the County maintained a property information website that provided detailed property history for all parcels located in the County. In addition, all lot review determinations were available to the public on request.

4

The Jespersens accepted the County's terms of sale and bid 26 times on lot 27 during the two-day auction. The Jespersens were the winning bidders for lot 27, having bid $28,600. Following the auction, the Jespersens paid the County the purchase price and received a tax deed for lot 27. The County paid $8,755.25 from the sale of lot 27 to County tax collection accounts for delinquent taxes, fees, interest and foreclosure costs related to the lot. The County paid Amae, the legal lot owner at time of sale, the balance of $19,844.75, as required under RCW 84.64.080.[3]

After acquiring lot 27, the Jespersens began researching the property.[4] They contacted the County and received the County's decisions in 1998 and 1999 that determined that lots 26 and 27 were one legal lot, and the Jespersens realized that lot 27 had been illegally subdivided.[5] The Jespersens then contacted their real estate agent and a real estate attorney. The Jespersens also contacted the county health department and confirmed that it denied an application in 2000 to install a septic system on lot 27. The Jespersens demanded the County rescind the sale of lot 27. The County refused. The Jespersens did not pursue any alternative remedies to the lot determination.[6]

---

[3] RCW 84.64.080(10) requires that if the highest bid exceeds the tax debt and costs, the County must refund any surplus to the owner of the property who held title at the time of tax delinquency.

[4] The Jespersens dispute this fact, but provide no evidence to support their position. Reply Br. of Appellant at 4. Moreover, even if they had researched lot 27 prior to their winning bid, they still chose to bid on the property.

[5] An email from County staff to the Jespersens on February 13, 2014, incorrectly states that the County's decision in 1998 recognized lot 27 "as a legal lot of record." CP at 223.

[6] The County's code also allows for property owners to apply for a public interest exemption to the legal lot determination, a variance of the zoning requirements, or zoning change for lots that do not meet the legal lot requirements. CP at 75-77, CCC 40.520.010(F)(2), .010(H).

II. PROCEDURE

The Jespersens sued the County alleging common law and statutory rescission under RCW 58.17.210, a taking without just compensation, procedural and substantive due process violations under the federal and state constitutions, and deprivation of their constitutional rights under 42 U.S.C. section 1983. The Jespersens filed a motion for summary judgment on their rescission claims. The County responded and filed a cross motion for summary judgment arguing that a tax foreclosure sale under chapter 84.64 RCW is not subject to rescission, the County is immune because they were statutorily required to conduct the tax foreclosure sale, and the Jespersens' claims are barred by the doctrine of caveat emptor.

The superior court denied the Jespersens' motion for summary judgment and granted the County's cross motion for summary judgment. The court subsequently entered a corrected order clarifying that the Jespersens' constitutional claims were preserved.

The Jespersens filed a second motion for summary judgment on their remaining constitutional claims.[7] The County responded and filed a second cross-motion for summary judgment. The County argued that the Jespersens were voluntary participants in the online property auction, and the County did not violate their procedural or substantive due process rights or deprive them of their property interests.

The superior court denied the Jespersens' second motion for summary judgment and granted the County's second cross motion for summary judgment. The superior court also awarded statutory attorney fees to the County. The Jespersens appeal both summary judgment orders.

---

[7] The Jespersens' second motion for summary judgment did not argue their takings claim; counsel formally abandoned the takings claim during the second summary judgment hearing.

ANALYSIS

I. STANDARDS OF REVIEW

We review a summary judgment order de novo and engage in the same inquiry as the superior court. *Club Envy of Spokane, LLC v. Ridpath Tower Condo. Ass'n*, 184 Wn. App. 593, 599, 337 P.3d 1131 (2014). Summary judgment is proper if there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). We view the facts and reasonable inferences from those facts in the light most favorable to the nonmoving party. *Club Envy*, 184 Wn. App. at 599.

We review questions of law and statutory construction de novo. *Amunrud v. Bd. of Appeals*, 158 Wn.2d 208, 215, 143 P.3d 571 (2006) ("Constitutional challenges are questions of law subject to de novo review.").

II. RESCISSION

A. STATUTORY RESCISSION

The Jespersens argue that, under RCW 58.17.210, they have a right to rescission as a remedy when a parcel of land is illegally subdivided. They also argue that the legislature intended to selectively abrogate the doctrine of caveat emptor that would otherwise apply to tax foreclosure sales under chapter 84.64 RCW. We disagree.

1. Statutory Interpretation of RCW 58.17.210

a. Standards of Review

The primary goal of statutory interpretation is to determine and give effect to the legislature's intent. *Jametsky v. Olsen*, 179 Wn.2d 756, 762, 317 P.3d 1003 (2014). To determine legislative intent, we first look to the plain language of the statute. *Jametsky*, 179 Wn.2d at 762.

"We consider the language of the provision in question, the context of the statute in which the provision is found, and related statutes." *In re the Adoption of T.A.W.*, 188 Wn. App. 799, 809, 354 P.3d 46 (2015), *aff'd* 186 Wn.2d 828 (2016). A specific statute will supersede a general one when both apply, even when the general statute was enacted after the specific statute. *Kustura v. Dep't of Labor and Indus.*, 169 Wn.2d 81, 88, 233 P.3d 853 (2010); *Residents Opposed to Kittitas Turbines v. State Energy Facility Site Evaluation Council*, 165 Wn.2d 275, 309, 197 P.3d 1153 (2008) ("[T]his court will construe the original specific statute as an exception to the general statute, unless expressly repealed.").

If the plain meaning of a statute is unambiguous, we must apply that plain meaning as an expression of legislative intent. *Jametsky*, 179 Wn.2d at 762. We do not rewrite unambiguous statutory language under the guise of interpretation. *Cerrillo v. Esparza*, 158 Wn.2d 194, 201, 142 P.3d 155 (2006). And we construe a statute to avoid absurd results. *Five Corners Family Farmers v. State*, 173 Wn.2d 296, 311, 268 P.3d 892 (2011). We will "'not add words where the legislature has chosen not to include them.'" *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010) (quoting *Rest. Dev. Inc., v. Cananwill, Inc.*, 150 Wn.2d 674, 682, 80 P.3d 598 (2003)).

b. Chapter 58.17 RCW

Chapter 58.17 RCW provides the statutory framework for the division of land. RCW 58.17.010-.920. RCW 58.17.210 provides for a right of rescission to a purchaser of land under the following circumstances:

> No building permit, septic tank permit, or other development permit, shall be issued for any lot, tract, or parcel of land divided in violation of this chapter or local regulations adopted pursuant thereto unless the authority authorized to issue

such permit finds that the public interest will not be adversely affected thereby. The prohibition contained in this section shall not apply to an innocent purchaser for value without actual notice. All purchasers' or transferees' property shall comply with provisions of this chapter and each purchaser or transferee may recover his or her damages from any person, firm, corporation, or agent selling or transferring land in violation of this chapter or local regulations adopted pursuant thereto, including any amount reasonably spent as a result of inability to obtain any development permit and spent to conform to the requirements of this chapter as well as cost of investigation, suit, and reasonable attorneys' fees occasioned thereby. Such purchaser or transferee may as an alternative to conforming his or her property to these requirements, rescind the sale or transfer and recover costs of investigation, suit, and reasonable attorneys' fees occasioned thereby.

RCW 58.17.300 provides a criminal penalty for violations of any provision of the subdivision chapter.

c. Chapter 84.64 RCW

Chapter 84.64 RCW provides the statutory requirements for foreclosing tax liens on real property. The legislature mandates that counties conduct tax foreclosure sales by following the statutory procedures.

Under RCW 84.64.050(1), a county is required to initiate foreclosure proceedings when any property has been in tax delinquency for three years. After receiving the order and judgment of the court on foreclosure, a county is required to immediately proceed to sell the property. RCW 84.64.080(4). "[P]rior to the sale of the property, the treasurer must order or conduct a title search of the property to be sold to determine the legal description of the property to be sold and the record title holder" and any liens on the property. RCW 84.64.050(4).

Under chapter 84.64 RCW a county is not required to research the legal lot determination of each property prior to foreclosure or provide an exception to foreclosure sale if the lot contains a defect in title. The act is silent on both.

9

Chapter 58.17 RCW regulates the division of land. RCW 58.17.210 provides a remedy of rescission to purchasers who buy land from a seller who illegally divided the land. Because RCW 84.64.050 and .080 governs tax foreclosure sales, these specific land sale provisions control over the general land sale provisions of RCW 58.17.210. *See Kustura*, 169 Wn.2d at 88. The plain language of RCW 84.64.080 does not authorize a right of rescission to a purchaser of an illegally divided, foreclosed lot. Because we do not add words to a statute that the legislature did not intend to include, we cannot read the right of rescission into the statutory provisions under RCW 84.64.080 when the plain language of the tax foreclosure statute does not authorize a right of rescission.

Further, under the Jespersens' interpretation, the county treasurer would be required to refund the purchase price to the purchaser of an illegally divided foreclosed lot. But their interpretation would led to absurd results. Counties do not own the property being auctioned and do not retain the surplus proceeds of the sale. RCW 84.64.080(10). Under RCW 84.64.080(10), the County is required to transfer the proceeds of all sales to the foreclosed upon landowner. Refunding the purchase price to the purchaser would result in a net loss of revenue to the County and would constitute an expenditure of new taxpayer funds. The County would not be put back into the position it was in prior to the tax foreclosure sale as required by the remedy of rescission. *See Busch v. Nervik*, 38 Wn. App. 541, 547-48, 687 P.2d 827 (1984).

Moreover, under the Jespersens' interpretation, the county treasurer would be liable for criminal penalties under RCW 58.17.300 by exercising its mandatory duty under RCW 84.64.050 and .080 to conduct tax foreclosure sales. Because this result cannot be what the legislature intended, we interpret the tax foreclosure statute to avoid such absurd results. Thus, we hold that

the plain language of RCW 84.64.080 does not provide a right of rescission, RCW 58.17.210 does not control, and the Jespersens' claim of a statutory right of rescission fails.

2. Application of the Doctrine of Caveat Emptor

The Jespersens argue that the doctrine of caveat emptor does not apply. We disagree.

"Caveat emptor" is Latin for "let the buyer beware." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 357 (2002). The Supreme Court has long held that, in the absence of a statute to the contrary, the doctrine of caveat emptor applies to tax foreclosure sales to bar claims of purchase price refunds in the case of an invalid title. *See Shelton v. Klickitat County*, 152 Wash. 193, 197, 277 P. 839 (1929);[8] *Anderson v. King County*, 200 Wash. 354, 361 93 P.2d 284 (1939); *see also Pioneer Nat. Title Ins. Co. v. County of Spokane*, 52 Wn. App. 869, 874, 765 P.2d 36 (1988) ("The County owes no duty to transfer clear title to the seller at a tax sale."). At the time of the *Shelton* decision, no statute governed tax foreclosures. After *Shelton*, the legislature enacted mandatory tax foreclosure procedures in chapter 84.64 RCW.

Here, the County expressly disclaimed any warranty in its terms and conditions of sale for the online auction and on its tax foreclosure sale webpages. All bidders were told to exercise due diligence to research the properties prior to bidding and that the County did not guarantee or warrant a legal lot determination. The instruction to prospective bidders implied that some properties may hold illegal lot status. The Jespersens accepted the County's terms of sale and bid

---

[8] The Supreme Court in *Shelton* explained that because no statute suggested that the county must warranty the title it conveys at a tax foreclosure, nor was there a statute that imposed a duty on the county to refund the purchase price due to failure of title, "the rule of caveat emptor stands insurmountably in the way of Shelton recovering from the county the purchase price." *Shelton*, 152 Wash. at 197.

26 times on lot 27 during the two-day auction. Here, like in *Shelton* and *Anderson*, no statute expressly requires the County to warrant the title it conveys at a tax foreclosure sale, nor is there a statute that requires the County to refund the purchase price due to a failure of title. Thus, we hold that the rule of caveat emptor applies to bar the Jespersens' claim of a statutory right of rescission.

B. COMMON LAW RESCISSION

The Jespersens also assert a common law claim of rescission based on a failure of consideration due to a frustration of purpose. We disagree.

"Rescission means to abrogate or annul and requires [a] court to fashion a remedy to restore the parties to the relative positions they would have [been in] if no contract had ever been made. Rescission is an equitable remedy and requires the court to fashion an equitable solution." *Busch*, 38 Wn. App. at 547. The court's equitable powers include the power to prevent the enforcement of a legal right that would otherwise result in an inequity under the circumstances. *Mendez v. Palm Harbor Homes, Inc.*, 111 Wn. App. 446, 460, 45 P.3d 594 (2002) (equity's goal is substantial justice).

To support their claim of a common law right of rescission based on a failure of consideration, the Jespersens presume a remedy for the purchase of an "as is" illegally divided and foreclosed lot under RCW 58.17.210, when no right of rescission exists under the controlling law, RCW 84.64.080, as discussed above. Because the doctrine of caveat emptor applies and the Jespersens bought the lot without the County granting a warranty of title, they have not shown a failure of consideration.

To further support their claim of common law rescission the Jespersens also argue failure of consideration due to a frustration of purpose. They claim a $28,600 loss because lot 27 is not

buildable and cannot be brought into compliance under the zoning laws. They argue that this frustrates their protected property interests to use and enjoy their property.

The Jespersens cite the County's code, CCC 40.530.010(C)(1)(b), that states that illegally divided lots which *cannot be brought into compliance*, must be discontinued or terminated. Br. of Appellant at 23-24, CP at 78. But the County's code also allows for property owners to apply for a public interest exemption to the legal lot determination, a variance of the zoning requirements, or zoning change for lots that do not meet the legal lot requirements. CP at 75, 76; CCC 40.520.010(F)(2), .010(H)).

As the County noted, lot 27 also has many remaining uses including farming, forestry conservation, and recreation. Lot 27 also may be used when combined with an adjacent property to create a larger lot, and the Jespersens could request a public interest exemption and/or a rezone.

The Jespersens acknowledge that they chose not to pursue any of these remedies. Verbatim Report of Proceedings (5/1/15) at 35-36. Because the Jespersens fail to provide any evidence that it is not feasible to alter the uses of lot 27, their property interests in lot 27 have not been frustrated. *See Scott v. Petett*, 63 Wn. App. 50, 61, 816 P.2d 1229 (1991). Like Scott, the Jespersens never applied for a rezone or pursued other available administrative remedies. *See Scott*, 63 Wn. App. at 61. "Until those possible administrative remedies are pursued to a logical conclusion without success, frustration of purpose has not been established." *Scott*, 63 Wn. App. at 61. Thus, we hold that the Jespersens have not shown a failure of consideration due to a frustration of purpose and their claim for common law rescission fails.

### III. DUE PROCESS

#### A. LEGAL PRINCIPLES

The Fourteenth Amendment to the United States Constitution prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. Both substantive and procedural due process protections are conferred under the Fourteenth Amendment. *Amunrud*, 158 Wn.2d at 216.

#### B. SUBSTANTIVE DUE PROCESS

The Jespersens argue that they were denied substantive due process because the County acted in an enforcement capacity under RCW 84.64.080 when it sold lot 27 without disclosing the lot's illegally divided lot status. They also argue that their participation in the tax foreclosure auction was unduly oppressive.[9] We disagree.

The Jespersens' substantive due process claim fails because they were not subject to any enforcement by the County. Rather, the prior owner, Amae, lost the property in the tax foreclosure sale. Because the Jespersens were not regulated by the County, their substantive due process claim fails on this basis.

Second, even assuming the Jespersens state a cognizable substantive due process claim, the County's action does not violate substantive due process. To determine the standard of review to be applied in a substantive due process challenge to government action, we begin with the nature of the right involved. *Amunrud*, 158 Wn.2d at 219. When government action does not affect a

---

[9] The Jespersens cite the Fifth and Fourteenth Amendments to the U.S. Constitution and article 1, section 3 of the Washington Constitution. Br. of Appellants at 19.

fundamental right, the proper standard of review is rational basis to evaluate whether the action violates substantive due process.[10] *Amunrud*, 158 Wn.2d at 222. Because the right to own property is a protected right but not a fundamental right, we apply a rational basis standard of review here. *See Chevron U.S.A., Inc. v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 156 Wn.2d 131, 138, 124 P.3d 640 (2005); *see also Amunrud*, 158 Wn.2d at 222. Under that review,

> the challenged law must be rationally related to a legitimate state interest. In determining whether a rational relationship exists, a court may assume the existence of any necessary state of facts which it can reasonably conceive in determining whether a rational relationship exists between the challenged law and a legitimate state interest.

*Amunrud*, 158 Wn.2d at 222 (citations omitted).

Here, the legislature addressed the public problem of tax delinquency by enacting RCW 84.64.050 and .080. The tax foreclosure statute requires counties to follow mandated procedures to conduct mandatory tax foreclosure sales. These procedures do not require a county to warrant title or provide a purchaser with a right of rescission, as discussed above.

The Jespersens concede that the tax foreclosure statute, chapter 84.64 RCW, supports the legitimate public purpose of collecting delinquent taxes. Br. of Appellants at 21. Although the Jespersens suggest that a public index of illegal lot determinations should be required, this information is already available to the public upon request of County staff. And all bidders were instructed to research and inspect lots before bidding.

---

[10] We acknowledge that prior to *Amunrud*, our Supreme Court applied a three-part balancing test to determine whether government action constitutes a violation of a landowner's substantive due process right under the U.S. Constitution. *Presbytery of Seattle v. King County*, 114 Wn.2d 320, 330, 787 P.2d 907 (1990).

Further, there is a rational relationship between the tax foreclosure statute and the legitimate public purpose of collecting delinquent taxes. The County is not required to warrant title or provide for a right of rescission for a foreclosed, illegally divided lot—precisely as the legislature intended by the plain language of RCW 84.64.050 and .080. We hold that the Jespersens cannot establish a violation of their substantive due process rights. Thus, their claim fails.

C. PROCEDURAL DUE PROCESS

The Jespersens argue that if there is no remedy of rescission under RCW 58.17.210, they have been denied procedural due process because chapter 84.64 RCW does not provide a mechanism to challenge the sale of foreclosed, illegally divided lots. We disagree that the Jespersens have been denied procedural due process.

When a state seeks to deprive a person of a protected interest, procedural due process requires that the state provide proper notice and the opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). We consider the following factors to determine what procedural due process is required: (1) the private interest affected, (2) the risk that the relevant procedures will erroneously deprive a party of that interest, and (3) any countervailing governmental interests involved. *Mathews*, 424 U.S. at 335.

As discussed above, the plain language of RCW 84.64.080 does not provide a mechanism to challenge the sale of foreclosed, illegally divided lots. The procedural protections afforded to a purchaser in a tax foreclosure sale include the notice of the sale; disclosure of the terms and conditions of the sale, including the County's express disclaimer of any warranty of title; an opportunity to bid on "as is/where is" lots; and a County issued deed to the highest bidder. The

procedures gave ample notice to all purchasers of the risks involved in bidding on lots in the online auction. CP at 146, 158. Any purchaser who did not want to assume the risk could choose not to participate. The Jespersens do not allege any defects in the foreclosure procedures, and there are no other procedural protections afforded that the Jespersens were not provided under chapter 84.64 RCW. Thus, we hold that the County did not violate the Jespersens' procedural due process rights, and their claim fails.

IV. 42 U.S.C. SECTION 1983 CLAIM

The Jespersens also argue that they have a substantive due process right to enjoy their property which the County interfered with and, thus, the County is liable under 42 U.S.C. section 1983 for damages for the purchase price, plus pre-judgment interest. They assert that the County acted under color of law when it denied them their right to use lot 27 for residential purposes by enforcing the tax foreclosure statutes without disclosing the lot's illegal status before the sale. We disagree.

42 U.S.C. section 1983 mandates liability against every person who "subjects, or causes to be subjected" any person "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." A municipality may qualify as a "person" for purposes of 42 U.S.C. section 1983. *Robinson v. City of Seattle*, 119 Wn.2d 34, 58, 830 P.2d 318 (1992). To state a claim for relief under 42 U.S.C. section 1983, the plaintiff must allege that defendant (1) acted under color of state law and (2) his conduct deprived the plaintiff of rights, privileges and immunities protected by the Constitution of the United States. *Brower v. Wells*, 103 Wn.2d 96, 104–05, 690 P.2d 1144 (1984). In order for a plaintiff to challenge a government action or regulation under 42 U.S.C. section 1983 on substantive due process grounds, a plaintiff "must

plead and prove that the challenged government action is wholly arbitrary and capricious or irrational, or utterly fails to serve a legitimate purpose." *Robinson*, 119 Wn.2d at 61.

Here, the Jespersens fail to plead a cognizable claim for relief under 42 U.S.C. section 1983. In their complaint, the Jespersens merely allege that the County "deprived the plaintiffs of their constitutional rights under color of statute, ordinance, regulation, custom or usage of the State of Washington, as mentioned above." CP at 10. The Jespersens have not identified a federal constitutional right or privilege protected by the Constitution as required by *Brower*. Nor can the Jespersens show that the County's mandatory tax foreclosure sales are arbitrary and capricious, irrational, or utterly fail to serve their intended public purpose to collect delinquent taxes. On the contrary, the Jespersens concede that the tax foreclosure sales serve a public purpose. Br. of Appellants at 21. Thus, because the Jespersens fail to identify a federal constitutional right and fail to plead a cognizable claim, we hold that the Jespersens' 42 U.S.C. section 1983 claim fails.

No. 48653-9-II

CONCLUSION

We affirm the superior court's orders denying the Jespersens' summary judgment motions and granting summary judgment in favor of the County.[11]

SUTTON, J.

We concur:

WORSWICK, J.

MAXA, A.C.J.

---

[11] The Jespersens request an award of appellate attorney fees and costs under RCW 58.17.210, 42 U.S.C section 1988, and under RAP 18.1. Because the Jespersens do not prevail, we deny their request for an award of appellate attorney fees and costs. The County does not request attorney fees or costs.